IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 26, 2020

## STATE OF TENNESSEE v. CHRISTOPHER C. SULLIVAN

**Appeal from the Criminal Court for Sullivan County**
**No. S68615    James F. Goodwin, Jr., Judge**

_____

### No. E2019-01853-CCA-R3-CD

_____

The Defendant, Christopher C. Sullivan, was charged with violation of the sex offender registry and perjury.  A Sullivan County jury found the Defendant not guilty of violating the sex offender registry and guilty of perjury.  The trial court sentenced the Defendant to an effective sentence of six years on probation, sixty days of which were to be served in confinement.  The Defendant appeals his conviction and sentence, arguing that the evidence presented at trial was insufficient to convict him of perjury, that the trial court abused its discretion in admitting as evidence a judgment of conviction form from New York and the indictment underlying that conviction, that the jury's verdicts were inconsistent, and that the trial court imposed an excessive sentence.  After review of the record, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Kenneth D. Hill, Kingsport, Tennessee, for the appellant, Christopher C. Sullivan.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Assistant Attorney General; Barry P. Staubus, District Attorney General; and Emily M. Swecker, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL AND PROCEDURAL HISTORY

The circumstances leading to these charges date back to 2004 in New York, when the Defendant was convicted of the attempted sexual abuse of his minor stepdaughter

from a previous marriage. He remarried in 2015 and moved into a Sullivan County, Tennessee, residence in 2016 together with his wife, their biological daughter, and his stepson. Due to his status as a sex offender, the Defendant began reporting his presence in Sullivan County to local officials. The Defendant reported to officials on a form under the penalty of perjury that he was not living with a minor child, and he confirmed that information at subsequent quarterly meetings. An incident involving the Defendant's stepson being transported to the hospital led officials to discover that the Defendant was living with his stepson, who was a minor at the time. The Defendant was charged with violating a sex offender registry law effectively prohibiting him from living with his stepson and with perjury for providing false information on the form under the penalty of perjury. The case proceeded to a jury trial. At trial, the Defendant conceded that his minor stepson lived with him at his residence, and he maintains that concession on appeal. He argues on appeal only that the State failed to prove that he provided false information on the form with the intent to deceive, contending that he did not know he was prohibited from living with his stepson. Therefore, we summarize the facts relating to matters other than the contested issue.

At trial, the State introduced a certified record evidencing the Defendant's 2004 New York conviction of attempted sexual abuse. It also introduced a certified copy of the indictment underlying that conviction, which demonstrated that the victim in that case was a minor aged approximately eleven years old.

Detective John Raymond of the Sullivan County Sherriff's Office managed the sex offender registry for Sullivan County in 2016 and registered sex offenders who resided in the county. The Defendant was one of the registrants assigned to meet with Detective Raymond. The Defendant would, on occasion, bring his wife to the meetings, but Detective Raymond never encountered the Defendant's stepson or daughter. The Defendant began reporting to Detective Raymond on April 4, 2016, and being classified as a violent offender, the Defendant was required to report four times per year. At the April 4, 2016 meeting, the Defendant completed his initial registration by working with Detective Raymond to submit a "TBI Sexual Offender Verification Tracking Form" ("tracking form") on the computer. Detective Raymond did not have to create a new registration for the Defendant because his information was already in the database from when he previously reported in Knoxville. Detective Raymond reviewed each of the Defendant's responses on the form with him before submitting it. Detective Raymond asked specifically whether there were any children living with him, but the Defendant never told him that there were.

At some point after the Defendant began reporting, the Defendant asked Detective Raymond if he could live with his own family. Detective Raymond explained that he had to call the Tennessee Bureau of Investigation ("TBI") because he had just started working in that position and did not know the answer to his question. However, the Defendant never told Detective Raymond that his minor stepson lived with him. Detective

2

Raymond explained at trial that the rules prohibit a sex offender from living with stepchildren "if the victim is under the age of 13 or . . . [i]f their victim was over 13 and the stepchild was the victim[.]" To determine if the criteria were met, Detective Raymond conducted an analysis of the original charge and confirmed that was why he had to call the TBI about it. The TBI informed Detective Raymond prior to the Defendant's September reporting date that the Defendant could only have a biological child live with him because of the "age of the victim." Detective Raymond never told the Defendant he could live with his stepson.

On September 1, 2016, the Defendant reported to Detective Raymond for one of his quarterly meetings, and Detective Raymond and the Defendant completed a tracking form. In Section B of the tracking form, the Defendant listed his address. Another question in Section B asked if a minor was residing at that address. The Defendant responded "No." Section I stated:

> Tennessee Code Annotated 39-16-702(b)(3). A person who, with intent to deceive, make[s] any false statement on the TBI registration is guilty of [the] felony offense of perjury.

The Defendant checked a box stating, "I acknowledge I have read and understand the requirements." Section F captured information relating to the Defendant's prior sexual offense. There, the Defendant listed he had a prior sexual offense from New York against an eleven-year-old female. At the September 1, 2016 meeting, Detective Raymond would have given the Defendant a copy of the sex offender registry rules, would have asked him if he had any questions, and would have written his next reporting date at the top. Detective Raymond identified at trial a copy of the rules dated January 27, 2016, and bearing the Defendant's signature; however, Detective Raymond did not review this particular set of rules with the Defendant and did not know if anyone had done so. The document acknowledged by the Defendant recites the following Tennessee law:

> 40-39-211(c): While mandated to comply with the requirements of this chapter, no sexual offender, violent sexual offender or violent juvenile sexual offender as ordered by the court whose victim was a minor shall knowingly reside with a minor. An offender may reside with a minor if the offender is a parent of the minor, unless one (1) of the following conditions applies:
> (1) The offender's parental rights have been or are in the process of being terminated as provided by law, or
> (2) Any minor or adult child of the offender was a victim of a sexual offense or violent sexual offense committed by the offender.
> **However, "parent" shall not include step-parent if the offender's victim was a minor less than thirteen (13) years of age.**

3

Detective Raymond learned later the Defendant was living with the Defendant's stepson.

The State elicited other testimony at trial showing the Defendant's stepson resided at the Defendant's address. While investigating an incident where the Defendant's stepson was transported to the hospital, Detective Michelle Gilliam of the Sullivan County Sherriff's Office learned that the Defendant's stepson resided with the Defendant at his address. A school counselor employed at the Defendant's stepson's school identified school records listing the Defendant's stepson's address as the same address the Defendant listed as his residence on forms submitted to Detective Raymond. Ms. Darla Waycaster of the Department of Children's Services testified that she investigated a case involving the Defendant's stepson assigned to her around September or October of 2016. She concluded based on her observations of the Defendant's residence and her conversations with the Defendant's stepson that the Defendant, the Defendant's wife, their daughter, and the Defendant's stepson lived there. The Defendant and the Defendant's wife also reported to Ms. Waycaster during her visit that the Defendant's stepson lived there. Detective Craig Dunworth of the Kingsport Police Department testified that he lived next door to the Defendant in September and October of 2016 and that he observed on occasion the Defendant's stepson in the Defendant's yard and riding a bike down the street.

The Defendant's proof at trial included testimony from the Defendant's wife and from himself. The Defendant's wife met the Defendant in South Carolina in 2010 and they were presently married. The Defendant's wife knew the Defendant was a registered sex offender and that the victim in his prior offense was his stepdaughter from a former marriage. During her time living with the Defendant, she observed him report to local authorities in South Carolina without issue. When they moved to Colorado, the Defendant also reported to local authorities there without issue, and she attended the meetings with him. Before moving to Tennessee, they researched the sex offender registry laws and believed that "everything was fine." They first moved into a house in Knoxville, Tennessee, but they soon realized they lived too close to a school. At that point, they moved out of the house and stayed in a motel for about six weeks until moving to Kingsport, Tennessee.

The Defendant's wife testified that she, their daughter, and the Defendant's stepson attended the reporting meetings with the Defendant in Sullivan County. The Defendant's meetings lasted about twenty minutes. The Defendant's wife would wait in the waiting room, and she would greet Detective Raymond when he entered the waiting room.

The Defendant admitted at trial that he had a prior 2004 New York conviction of attempted sexual abuse against his stepdaughter from a previous marriage. The Defendant met his present wife in 2010 and first met his stepson about a month and a half

4

to two months after moving in with his wife in 2011. In both South Carolina and Colorado, the Defendant lived with his stepson, and he made sure there were no restrictions against him doing so. In Colorado, unlike in Tennessee, he was given paperwork to review and the contents were reviewed with him step by step. The Defendant married his wife in 2015 while they were living in Colorado.

When the Defendant moved to Tennessee with his wife, daughter, and stepson, they first rented a house in Knoxville. However, when he registered in Knoxville, he was informed he could not live at his address since it was too close to a day care. At that point, he put his belongings in storage and became homeless until he found another place to stay. The Defendant's wife, his daughter, and his stepson stayed in a motel during that time. The Defendant interpreted rules he researched to mean that he was a non-violent offender and was permitted to live with his stepson. He was never informed that living with his stepson was an issue. He and his stepson would go to public places together, and he referred to his stepson as his son.

The Defendant called Detective Raymond before signing a lease to reside in Sullivan County. He told Detective Raymond that he was going to be living with his wife and children; however, he used the terms "children" and "son" because he considered them his family, and he was just trying to find a place to stay. Based on this information, Detective Raymond told the Defendant that there were no issues with his living at his address with his family.

The Defendant first went to register with Detective Raymond on April 4, 2016, accompanied by his wife, his daughter, and his stepson. When Detective Raymond called him back to his office, Detective Raymond was having computer trouble, and he just pulled the Defendant's registration information from the TBI website. Detective Raymond then told the Defendant his next reporting date and released him without discussing the rules. He reported quarterly and brought his entire family each time. His next meeting was on June 1, 2016. Other than asking if there were any changes he had to report, Detective Raymond did not ask any questions at the meetings.

The Defendant maintained at trial that he was not shown the rules before he had to sign for them. He signed on a small, black pad containing no writing and could not see the electronic form because he was positioned behind the computer monitor. According to the Defendant, he had no reason to know that he should have informed Detective Raymond of the fact that he was living with his stepson because nobody explained its legal significance to him. The Defendant acknowledged the existence of a copy of Tennessee's sex offender registry rules dated January 27, 2016, and bearing his signature. The Defendant admitted at trial to receiving a copy of the rules every time he registered with Detective Raymond, but he explained that they were different than the rules he read online.

5

Regarding the tracking form dated September 1, 2016, the Defendant acknowledged that it contained a warning to read the form carefully before signing, required him to check a box indicating that he had read and understood the requirements, and informed him right above his signature line that he could be subject to perjury charges for making false statements on it "with the intent to deceive." However, he explained that he was never shown the tracking form and could not view it as he signed. The Defendant also acknowledged that a response on the tracking form indicated that there were no minor children living at his residence, but he stated that he did not enter that response and that Detective Raymond knew he had minors living with him. He agreed that his stepson lived with him from September to October of 2016, at a time when his stepson was thirteen years old.

At the conclusion of the trial, the jury found the Defendant not guilty of violating the sex offender registry but found him guilty of perjury. The trial court then sentenced the Defendant to an effective sentence of six years on probation, sixty days of which were to be served in confinement. The Defendant appeals the outcome of his case on four grounds: (1) the evidence was insufficient to support his perjury conviction; (2) the trial court abused its discretion in admitting into evidence a conviction from New York and the indictment underlying that conviction; (3) the jury's verdicts were inconsistent, requiring reversal, and (4) the trial court abused its discretion in sentencing him to six years of probation.

**ANALYSIS**

**I. Sufficiency of the Evidence**

The Defendant contends that the evidence presented at trial was insufficient for the jury to convict him of perjury. He concedes that he resided with his minor stepson and that the registration form introduced as an exhibit at trial indicated that he did not live with "minor children," but he contends that the State failed to prove his intent necessary to be convicted of perjury. The State responds that the evidence was sufficient for the jury to convict the Defendant of perjury because the evidence shows that he received the registry rules and signed that he understood them, that he stated under the penalty of perjury that no minor child resided with him, and that he was living with his minor stepson.

Reviewing the sufficiency of the evidence supporting a criminal conviction requires this court to first "examine the relevant statute(s) in order to determine the elements that the State must prove to establish the offense." *State v. Stephens*, 521 S.W.3d 718, 723 (Tenn. 2017). Next, we determine "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* at 724 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis original). If the

6

evidence is insufficient to support the finding of guilt beyond a reasonable doubt made by the trier of fact, its finding of guilt "shall be set aside." Tenn. R. App. P. 13(e). Once a defendant has been convicted, the presumption of innocence is replaced with a presumption of guilt on appeal. *Turner v. State*, 394 S.W.2d 635, 637 (Tenn. 1965). To overcome a presumption of guilt on appeal, the defendant bears the burden of showing the evidence presented at trial was "insufficient for a rational trier of fact to find guilt of the defendant beyond a reasonable doubt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982) (citing *State v. Patton*, 593 S.W.2d 913 (Tenn. 1979)).

The State "is entitled to the strongest legitimate view of the trial evidence and all reasonable and legitimate inferences which may be drawn from the evidence." *State v. Evans*, 108 S.W.3d 231, 237 (Tenn. 2003) (citing *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000); *State v. Hall*, 8 S.W.3d 593, 599 (Tenn. 1999); *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). This court may not reweigh or reevaluate the evidence, because "questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *Id.* at 236 (citing *Bland*, 958 S.W.2d at 659). After a guilty verdict has been entered, the testimony of the State's witnesses is accredited, and all conflicts in the testimony are resolved in favor of the theory of the State. *State v. Nichols*, 24 S.W.3d 297, 301 (Tenn. 2000) (citing *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973)). Whether the evidence underlying the defendant's conviction at trial was direct or circumstantial, the same standard of review applies. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (citing *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

Here, the Defendant was convicted of perjury. The crime of perjury in the context of this case required the prosecution to show the Defendant made, with the intent to deceive, "a false statement, not under oath, but on an official document required or authorized by law to be made under oath and stating on its face that a false statement is subject to the penalties of perjury[.]" T.C.A. § 39-16-702(a)(3). The statute also directs that "[e]ach TBI registration form shall clearly state in bold face type directly above the signature line that an applicant who, with the intent to deceive, makes any false statement on the application is guilty of the felony offense of perjury." *Id.* § 39-16-702(b)(3). "Perjury committed on a sexual offender or violent sexual offender TBI registration form . . . is a Class E felony." *Id.* A person acts "intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result." T.C.A. § 39-11-302(a).

Viewing the evidence in the light most favorable to the State, the Defendant reported to Detective Raymond on April 4, 2016, for his initial registration. During that meeting, the Defendant completed with Detective Raymond a tracking form by confirming that the information already contained in the registry was correct. On September 1, 2016, the Defendant met with Detective Raymond again where he completed an update to his sex offender registry form under the penalty of perjury. In

completing the form, the Defendant confirmed his address and that no minor child was residing at that address. By all accounts, his minor stepson resided at his address on September 1, 2016. The tracking form contained a provision signed by the Defendant, indicating in bold type face above the signature line that the completion of the form was performed under the penalty of perjury.

The jury's guilty verdict with respect to the perjury count rested, in part, on the jury's determination of witness credibility regarding intent. The Defendant testified at trial that he did not know he was prohibited from living with his stepson at the time of the initial April 4 registration or the September 1 meeting. He also testified that he did not intend to conceal the fact that he resided with his stepson. However, the Defendant signed an acknowledgement of the sex offender registry rules prior to those dates, on January 27, 2016. The document acknowledged by the Defendant recited the law effectively prohibiting him from living with his stepson. Under these circumstances, the jury could have found that the Defendant knew of his obligation to report that he lived with his stepson and that the Defendant intentionally failed to disclose that information on the tracking form to mislead officials. Although the record contains conflicting accounts of the Defendant's knowledge of the sex offender registry rules, we cannot reweigh on appeal the jury's determination of witness credibility. *See Evans*, 108 S.W.3d at 236. Therefore, we conclude that the evidence was sufficient to sustain the Defendant's conviction for perjury.

## II. Admissibility of Evidence

The Defendant contends that the trial court erred in admitting two documents as evidence: (1) a certified copy of a prior conviction of attempted sexual abuse from New York and (2) a certified copy of the indictment underlying that conviction that showed he was originally charged with sexual abuse and that the victim was approximately eleven years old at the time of the offense. We review both claims under the same standard.

A trial court's decision about the admissibility of evidence is reviewed for an abuse of discretion. *State v. Herron*, 461 S.W.3d 890, 904 (Tenn. 2015) (citing *State v. Parker*, 350 S.W.3d 883, 896-97 (Tenn. 2011)). A reviewing court "'will find an abuse of discretion only when the trial court applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employed reasoning that causes an injustice to the complaining party." *Parker*, 350 S.W.3d at 897 (quoting *State v. Banks*, 271 S.W.3d 90, 116 (Tenn. 2008).

### A. Admissibility of the Prior Conviction Judgment Record

The Defendant contends that the trial court abused its discretion when it admitted over his objection a copy of a New York State "Sentence and Commitment" judgment form. As support, the Defendant argues that the out-of-state judgment form must satisfy

the requirements of Tennessee Rule of Criminal Procedure 32 and that the trial court should not have admitted the judgment form because it did not contain a judge's signature as required by Rule 32. Had the trial court excluded the evidence, the Defendant suggests that he would not have been convicted of perjury because the State could not have shown he was required to report to the Tennessee registry. The State responds that the form was properly admitted to show the Defendant was subject to the sex offender registry in Tennessee. As support, the State argues that the judgment form was not subject to Rule 32 because it was from another state. The State also argues that the certification was signed by a judge verifying the records were official and a printout of the conviction was sworn to by a clerk.

In a pretrial hearing regarding the admissibility of the judgment form, the Defendant objected that it did not comply with Tennessee Rule of Criminal Procedure 32 because it lacked a judge's signature. The Defendant contended that it could not be considered a judgment of conviction in Tennessee since it lacked a judge's signature. The trial court found that the certified copy of the judgment form was "a proper condition" because the conviction was a "foreign conviction." Implicit in its findings was its conclusion that the conviction did not have to comply with Rule 32(e) because it was not a Tennessee judgment. The trial court additionally found that there was a certification signed by a judge attesting that it was an official record of the court and a computer printout of the conviction signed by the clerk.

The Defendant has not shown that the trial court abused its discretion in admitting the New York judgment into evidence over his objection. Tennessee Rule of Criminal Procedure Rule 32(e) requires that "[a] judgment of conviction shall be signed by the judge and entered by the clerk." As the trial court noted, the New York judgment is a foreign conviction rather than one originating in Tennessee. The Defendant cites nothing in support of the proposition that Rule 32(e) requires evidence of foreign convictions to be signed by a judge. Accordingly, we conclude that the trial court did not abuse its discretion.

In any event, any error committed by the trial court was harmless. We analyze this issue under harmless error analysis because "evidentiary ruling[s] ordinarily do[] not rise to the level of a constitutional violation." *State v. Powers*, 101 S.W.3d 383, 397 (Tenn. 2003). Under harmless error analysis, convictions may not be reversed on appeal unless the error "involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process." Tenn. R. App. P. 36(b). Conducting this analysis requires us to consider the entire record, including "the properly admitted evidence of the defendant's guilt." *State v. Rodriguez*, 254 S.W.3d 361, 372 (Tenn. 2008) (citing *State v. Gilliland*, 22 S.W.3d 266, 274 (Tenn. 2000)). "The greater the amount of evidence of guilt, the heavier the burden on the defendant to demonstrate that a non-constitutional error involving a substantial right more probably than not affected the outcome of the trial." *Id.* (citing *State v. Toliver*, 117 S.W.3d 216, 231

(Tenn. 2003); *State v. Francis*, 669 S.W.2d 85, 91 (Tenn. 1984)). Here, the Defendant admitted at trial to being convicted of attempted sexual abuse in New York. Additionally, the Defendant's wife testified that she knew about his New York conviction. In light of the properly admitted evidence of the Defendant's guilt, we cannot conclude that any error committed by the trial court in admitting the judgment into evidence more probably than not affected the judgment or resulted in prejudice. As a result, we conclude that the trial court's decision to admit the evidence of the judgment was harmless if erroneous.

## B. Admissibility of the Indictment

The Defendant also contends that the trial court abused its discretion when it admitted over his objection a copy of the New York indictment. As support, the Defendant argues that the indictment was prejudicial to him because it showed a more serious charge of "Sexual Abuse in the First Degree" when he was actually convicted of "Attempted Sex Abuse." The Defendant believes that the introduction of that information as evidence prejudiced his defense and that a new trial is required. The State responds that the trial court properly admitted the indictment because it was offered to show the victim was under the age of thirteen years old. The State contends that the Defendant failed to show prejudice even if the trial court erred in admitting the form into evidence.

The State sought to introduce as evidence at trial a copy of the indictment underlying the New York attempted sex abuse conviction, showing that the Defendant was originally charged with sexual abuse in the first degree and that the victim in that case was approximately 11 years old. In a pretrial hearing regarding the admissibility of the indictment, the Defendant objected that it should have been excluded from evidence because it was only based on probable cause rather than being based on evidence beyond a reasonable doubt. The State contended that the evidence was admissible to show that the victim in the New York conviction was under the age of thirteen years old. The trial court allowed the State to admit the indictment into evidence because the Defendant pleaded guilty to the underlying conduct.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Relevant evidence is admissible unless it is otherwise excluded by constitutional right, rule of evidence, or other rule or statute. Tenn. R. Evid. 402. A trial court may, under Tennessee Rule of Evidence 403, exclude relevant evidence where "its probative value is substantially outweighed by the danger of unfair prejudice . . . ." "'Unfair prejudice'" is "'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *State v. McCaleb*, 582 S.W.3d 179, 189 (Tenn. 2019) (quoting *State v. Banks*, 564 S.W.2d 947, 951 (Tenn. 1978)).

Here, the trial court's decision to admit the indictment as evidence was not an abuse of discretion. To be convicted of violating the sex offender registry in this case, the State had to prove that the Defendant's victim in the case requiring him to be on the sex offender registry was a minor under the age of thirteen. *See* T.C.A. § 40-39-211(c)(1); *see also* T.C.A. § 40-39-202(11). The indictment demonstrated that the victim was approximately eleven years old when the circumstances underlying his attempted sexual abuse conviction occurred. Accordingly, the indictment was highly probative to show he violated the sex offender registry because it tended to establish that he was prohibited by statute from residing with his minor stepson.

The Defendant has not shown how the danger of unfair prejudice substantially outweighed the indictment's probative value. The certified copy of the conviction admitted as evidence reduced the likelihood that the indictment would be used for an improper purpose, because it demonstrated he was actually convicted of the lesser offense of attempted sexual abuse. Therefore, we conclude that the trial court did not abuse its discretion in admitting the indictment as evidence.

Because we have concluded that the trial court did not abuse its discretion in admitting either the evidence of the prior conviction or the indictment, the Defendant is not entitled to relief.

### III. Inconsistency of the Jury's Verdicts

The Defendant argues that the jury's verdicts in his case were inconsistent such that his perjury conviction should be vacated. As support, he argues that the jury's not guilty verdict on the violation of sex offender registry count negated an essential element of perjury. The Defendant acknowledges longstanding case law in Tennessee providing that inconsistent jury verdicts do not provide a ground for reversal. However, the Defendant asks our court to abandon that rule of law. The State contends that the jury's verdicts do not require this court to vacate the Defendant's perjury conviction. As support, the State cites to case law holding that inconsistent jury verdicts do not provide a ground for reversal on appeal. The State also argues that the Defendant speculates as to whether the jury concluded he was not lawfully on the sex offender registry.

Here, the jury found the Defendant not guilty of violation of the sex offender registry, and it found the Defendant guilty of perjury. In *State v. Davis*, the Tennessee Supreme Court reaffirmed its "longstanding position of honoring and respecting a jury's verdicts" by holding that "inconsistent jury verdicts are not a basis for relief." 466 S.W.3d 49, 77 (Tenn. 2015). The Defendant's claim is not a basis for relief. Therefore, we conclude that the Defendant is not entitled to relief on this ground.

11

# IV. Sentencing

The Defendant challenges his sentence on the ground that the trial court abused its discretion by ordering him to serve six years on probation. At the sentencing hearing, Detective Gilliam, who specialized in child physical and sexual abuse, testified that she responded to a call on October 20, 2016, informing her that the Defendant's stepson had been taken to the hospital emergency room after being physically abused. At the hospital, Detective Gilliam observed the Defendant's stepson's injuries, and she photographed them. She concluded from her discussions with the Defendant's stepson that the Defendant was a suspect in relation to the physical abuse. The subsequent investigation led to uncovering the evidence of a potential sex offender registry violation and perjury.

The Defendant called his wife to testify at the hearing, and he also testified. The Defendant's wife testified that the Defendant was the "breadwinner" of the family. She expressed her belief that the Defendant should be placed on probation to help pay the bills and take care of the family. The Defendant testified that he took his wife to many medical appointments, that he did all of the household cooking, that he and his wife were actively involved in homeschooling their daughter, and that he presently had his own medical issues for which he was undergoing treatment. The Defendant expressed his belief that he should receive an alternative sentence to take care of his health and to care for his family.

The trial court considered the evidence presented at the hearing, the presentence report, and the relevant sentencing factors. The trial court found applicable the enhancement factor based on the Defendant's prior record "a previous history of criminal convictions or criminal behavior[.]" T.C.A. § 40-35-114(1). The trial court also found applicable the mitigating factor that the Defendant's conduct "neither caused nor threatened serious bodily injury[.]" *Id.* § 40-35-113(1). Regarding non-statutory factors, the trial court found that the Defendant "probably committed misdemeanor perjury" while completing a uniform affidavit of indigency because of trial testimony that conflicted with his responses on that form regarding his income. In addition, the trial court found it concerning that the Defendant did not take responsibility for his conduct in the present case. The trial court sentenced the Defendant to one and a half years. The trial court then suspended the execution of that sentence, and it sentenced the Defendant to six years of supervised probation, sixty days of which were to be served in confinement.

The Defendant argues that the trial court abused its discretion in sentencing him to six years of probation. As support, he contends that the trial court could ultimately sentence him to six years of confinement if he violates probation and the trial court revokes it. According to the Defendant, a resulting six-year sentence would exceed the permissible sentence for a Range I offender convicted of a Class E felony. The State

argues that the trial court did not abuse its discretion because the six-year probationary sentence was within its statutory authority to impose. As support, the State argues that the Defendant is mistaken in his belief that the trial court could sentence him to six years of confinement after finding that he violated his probation. According to the State, the maximum sentence the trial court could impose in that situation would be the original one-and-a-half-year sentence it ordered but suspended.

We first note that the Defendant's argument presents one material issue and one hypothetical issue. Whether the trial court abused its discretion in sentencing the Defendant based on its statutory authority to do so is a material issue we will address on the merits. However, whether the trial court may later resentence the Defendant to six years of incarceration after finding he violated probation is a hypothetical issue not yet before this court.

This court reviews the length of a sentence for abuse of discretion, applying "a presumption of reasonableness to within-range sentences that reflect a proper application of the purposes and principals of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). A sentence will be upheld "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10. This standard of review also applies to "questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012).

Regarding the first issue presented, we conclude that the trial court did not abuse its discretion in sentencing the Defendant to six years of probation. If a court finds that probation is appropriate, it

> shall suspend the execution of all or part of the sentence and place the defendant on supervised or unsupervised probation either immediately or after a period of confinement for a period of time no less than the minimum sentence allowed under the classification and up to and including the statutory maximum time for the class of the conviction offense.

T.C.A. § 40-35-303(c)(1). A Class E felony permits a range of sentences between one and six years. *See* T.C.A § 40-35-111(5). The Defendant was convicted of perjury, a Class E felony, *see* Tenn. Code Ann. § 39-16-702(b)(3), and the trial court ordered him to serve six years on supervised probation. The trial court appropriately sentenced the Defendant to six years of probation because it was within the statutorily authorized range permitted for Class E felonies. *See* T.C.A. § 40-35-303(c)(1) (permitting a probationary sentence "up to and including the statutory maximum time for the class of the conviction offense" rather than limiting a sentence to the range permitted by the Defendant's individual classification). Accordingly, we conclude that the trial court did not abuse its discretion and that the Defendant is not entitled to relief on this claim.

13

As discussed above, the Defendant's argument also invites us to decide whether the trial court may later impose a six-year sentence of confinement if it revokes his probation after finding he violated its conditions. We decline to decide that issue because it is not in controversy yet. Under the justiciability doctrine of ripeness, we decline to review those issues that are neither fit for judicial decision nor would "withholding adjudication . . . impose any meaningful hardship on the parties." *State v. Price*, 579 S.W.3d 332, 338 (Tenn. 2019) (citations omitted). In the record before us, the trial court has not revoked the Defendant's probation. Any sentence it might later impose if that controversy arises is not presently at issue. We conclude that this issue is not ripe for review, and we decline to decide it on the merits.

## CONCLUSION

Based upon the foregoing reasons, we affirm the judgment of the trial court.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE

14